Paul LOZANO, on behalf of himself and all others similarly situated and as a private attorney general on behalf of the members of the general public residing within the State of California, Plaintiff,

v.

AT & T WIRELESS, a Delaware corporation, and Does 1 through 20, inclusive, Defendants.

No. CV–02–00090 WJR (AJWx).

United States District Court, C.D. California.

June 10, 2002.

Peter J. Bezek, Jacquelyn K. Phlegar, Foley & Bezek, Santa Barbara, CA, for plaintiff.

Mark E. Weber, Gibson, Dunn & Crutcher LLP, Los Angeles, CA, for defendants.

ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

REA, District Judge.

After consideration of the moving papers and relevant authorities submitted in support of Defendant's Motion to Compel Arbitration and To Stay Proceedings, the Court finds that good cause does exist to GRANT Defendant's Motion.

IT IS HEREBY ORDERED that the Motion to Compel Arbitration and To Stay Proceedings is GRANTED.

## I. Legal Standard

The Federal Arbitration Act ("FAA") applies to "a contract evidencing a transaction involving commerce...." 9 U.S.C. § 2. Any arbitration agreement within the FAA's scope "shall be valid, irrevocable, and enforceable," *id.*, and permits a party "aggrieved by the alleged ... refusal of another to arbitrate" to file a petition in the district court for an order compelling arbitration. 9 U.S.C. § 4. The court, "upon being satisfied that the making of the agreement for arbitration ... is not in issue ... shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." By the terms of the FAA, the district court shall direct the parties to proceed to arbitration with regard to issues which the relevant arbitration agreement covers, and thus there is no place for the exercise of discretion by the district court. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.2000) (citation and quotation omitted). Additionally, a party to a lawsuit pending in federal court may request that the court stay the court proceedings pending the outcome of the arbitration proceedings. 9 U.S.C. § 3; *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir.1996); *Arriaga v. Cross Country Bank*, 163 F.Supp.2d 1189, 1192 (S.D.Cal.2001).

 Thus, the court's role under the FAA is limited to determining: (1) whether the arbitration agreement is valid and enforceable and (2) whether the claims asserted are within the purview of the arbitration agreement. *Id.; Howard Elec. & Mech. Co., Inc. v. Frank Briscoe Co., Inc.*, 754 F.2d 847, 849 (9th Cir.1985); *Bis-*

*choff v. DirecTV, Inc.,* 180 F.Supp.2d 1097, 1102 (C.D.Cal.2002).

Furthermore, the FAA evinces a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Arriaga,* 163 F.Supp.2d at 1191. Thus, a court must look at questions of arbitrability with the federal policy favoring arbitration in mind. *Arriaga,* 163 F.Supp.2d at 1191 (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24, 103 S.Ct. 927).

## II. Analysis

### A. Validity and Enforceability of the Arbitration Agreement

Plaintiff argues that the arbitration clause is unenforceable because it is contained within the Welcome Guide,[1] which was allegedly only provided to Plaintiff after he signed a service plan. Thus, in Plaintiff's view, the Welcome Guide is not part of the contract for cellular service, and its terms, including the arbitration clause, are not enforceable against Plaintiff.

Defendant argues that the Welcome Guide is enforceable. In fact, Defendant asserts that Plaintiff received a rate plan brochure, which stated: "[y]our service is subject to the Terms and Conditions contained in your AT & T Wireless Services Welcome Guide, which is included with your phone or available at point-of-purchase." (Haight Decl.Ex. A.) Further, the Welcome Guide itself directs the purchaser to the terms and conditions section of the agreement, and notifies the purchaser of Defendant's cancellation policy. (Def.'s Mot. to Compel at 3.)

■ The Court finds that providing customers with terms and conditions after an initial transaction is acceptable, and that such terms and conditions are enforceable, including arbitration clauses. As noted in *Bischoff,* the economic and practical aspects of selling services to mass consumers allows for terms and conditions to follow an initial transaction. *Bischoff,* 180 F.Supp.2d at 1105 (citing *ProCD, Inc. v. Zeidenberg,* 86 F.3d 1447, 1451 (7th Cir. 1996)). Further, as the Seventh Circuit noted in *Hill, et al. v. Gateway 2000,* 105 F.3d 1147, 1149 (7th Cir.1997): "[c]ustomers as a group are better off when vendors skip costly and ineffectual steps such as telephonic recitation, and instead use a simple approve-or-return device. Competent adults are bound by such documents, read or unread." *Gateway 2000,* 105 F.3d at 1149. The *Gateway* Court found that the contract terms and conditions were enforceable despite plaintiffs' argument that the terms were unenforceable because the order-taker did not read the terms over the phone. *Gateway 2000,* 105 F.3d at 1149. The fact that the customer purchased the computer over the phone and was later sent the computer and the contract terms did not render the contract unenforceable. *Id.; accord Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 587, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (enforcing forum selection clause printed on the back of a ticket received by passengers in the mail subsequent to ticket purchase).

Likewise, in *Bischoff,* the Central District found that the plaintiff was bound by the arbitration clause in a satellite television service agreement even though the arbitration provision was provided to plaintiff after he had already entered into the service agreement. *Bischoff,* 180 F.Supp.2d at 1103.

---

1. The Welcome Guide is contained within the box of a newly purchased phone. The phone and Welcome Guide are provided to the purchaser after a contract for service has been signed. (Pl.'s Opp. at 6.)

**1074**

Based on the foregoing authority, the Court finds that the arbitration clause in the Welcome Guide is not rendered unenforceable merely by its absence from the original service contract. The Court accords little weight to the fact that the Welcome Guide is not entitled "service contract" or "terms and conditions of service." A purchaser is made aware of the location of the "terms and conditions" on the second page of the Welcome Guide. (Haight Decl.Ex. A.) Further, the "terms and conditions" are the first thing mentioned in the Welcome Guide. (*Id.*) It is not the case, as Plaintiff would have this Court believe, that Defendant attempted to "slide" the arbitration clause into the contract by way of the Welcome Guide. (Pl.'s Opp. at 7.) As the *Bischoff* Court astutely observed: "[p]ractical business realities make it unrealistic to expect ... [defendant] or any television programming service provider for that matter, to negotiate all of the terms of their customer contracts, including arbitration provisions, with each customer before initiating service." *Bischoff,* 180 F.Supp.2d at 1105. Likewise, this Court should not require that a cellular telephone service provider negotiate all of the terms of their customer contracts before initiating service. Although the arbitration clause is contained within the Welcome Guide, it is plainly obvious that the terms and conditions of service are detailed in the guide, and part of the cellular service contract.

**B. Unconscionability of the Arbitration Clause**

Although federal policy favors arbitration agreements, the federal courts should rely on state law when addressing issues of contract validity and enforceability. *Bischoff,* 180 F.Supp.2d at 1106 (citing *Green Tree Fin. Corp.—Alabama v. Randolph,* 531 U.S. 79, 81, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 936–37 (9th Cir.2001)) (citations omitted). Thus, contract defenses generally applicable under state law, including, fraud, duress, or unconscionability may be asserted to invalidate arbitration agreements without contradicting Section 2 of the FAA. *Id.* A court's unconscionability analysis on a motion to compel is limited to the arbitration clause in the agreement. *Id.* at 1107 (citing *Gray v. Conseco, Inc.,* No. CV 00–322, 2000 WL 1480273 (C.D.Cal. Sept.29, 2000) ("*Gray I*")).

"Under California law, for a contract term to be held unconscionable it must possess two elements: procedural unconscionability (meaning terms which are outside of the reasonable expectations of the parties) and substantive unconscionability (meaning terms that are overly harsh or one-sided)." *Arriaga* 163 F.Supp.2d at 1194 (citing *Armendariz v. Foundation Health Psychcare Servs.,* 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000)).

The first step in the unconscionability analysis is to determine whether the contract is one of adhesion. *Bischoff,* 180 F.Supp.2d at 1107 (citing *Armendariz,* 24 Cal.4th at 113, 99 Cal.Rptr.2d 745, 6 P.3d 669). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract of reject it." *Bischoff,* 180 F.Supp.2d at 1107; *Neal v. State Farm Ins., Co.,* 188 Cal.App.2d 690, 694, 10 Cal. Rptr. 781 (1961). A contract of adhesion is unconscionable when both procedural and substantive unconscionability are present. *Id.* (citing *Armendariz,* 24 Cal.4th at 99, 99 Cal.Rptr.2d 745, 6 P.3d 669). Procedural and substantive unconscionability need not be present in the same degree. *Bischoff,* 180 F.Supp.2d at 1107.

### 1. Procedural Unconscionability

█ The Welcome Guide that accompanied delivery of Plaintiff's phone is a contract of adhesion. (Haight Decl.Ex. A.) The contract is a form contract imposed by the party with superior bargaining power-Defendant. Additionally, Plaintiff was not free to negotiate the terms of the contract, but rather, could only (1) cancel the contract immediately if the terms and conditions were not agreeable; or (2) cancel the contract within 30 days of activation. (Haight Decl.Ex. A.) "[A] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Bischoff*, 180 F.Supp.2d at 1107 (citing *Flores v. Transamerica Homefirst, Inc.*, 93 Cal. App.4th 846, 853, 113 Cal.Rptr.2d 376 (2001)) (internal quotations omitted). Thus, the Court finds that the arbitration clause in the Welcome Guide is procedurally unconscionable. However, to find that an arbitration clause is invalid, substantive unconscionability must also exist.

### 2. Substantive Unconscionability

█ In order for a contract term to be substantively unconscionable, it must be found to be so one-sided as to "shock the conscience." *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199, 1212–1213, 78 Cal.Rptr.2d 533 (1998).

Plaintiff asserts that the arbitration clause is so restrictive that it is unreasonable on its face. (Pl.'s Opp. at 13.) According to Plaintiff, the arbitration clause is unconscionable because it requires Plaintiff to submit to binding arbitration, it prevents Plaintiff from seeking punitive damages, and it prevents class actions. Plaintiff relies on *Kinney v. United Healthcare Services, Inc.*, 70 Cal.App.4th 1322, 1332, 83 Cal.Rptr.2d 348 (1999) for the general assertion: a provision in an arbitration clause should not seek to make the arbitration process an offensive weapon for one party. *Kinney*, 70 Cal.App.4th

at 1332, 83 Cal.Rptr.2d 348. The arbitration clause at issue in this case is not a one-sided weapon in the *Kinney* sense. In *Kinney*, the arbitration clause was found to be unconscionable because it imposed a unilateral obligation on employees to arbitrate. The defendant, United Health Care Services was not obligated to arbitrate its claims against employees, yet its employees were required to go to arbitration. *Id.* at 1330–1332, 83 Cal.Rptr.2d 348. Here, the arbitration clause states:

> any dispute or claim arising out of relating to this Agreement ... will be resolved by binding arbitration except that (1) you may take claims to small claims court if they qualify for hearing by such a court, or (2) you or we may choose to pursue claims in court if the claims relate solely to the collection of any debts you owe to us. However, even for those claims that may be taken to court, you and we both waive any claims for punitive damages and any right to pursue claims on a class or representative basis.

(Haight Decl.Ex. A at 24, § 5.a.) This arbitration clause is not wholly unilateral. Unlike the arbitration clause in *Kinney*, the AT & T Wireless arbitration clause requires *both* parties to arbitrate, and allows customers to take claims to small claims court where appropriate. (*Id.*)

█ Furthermore, the Court finds that the punitive damage limitation and the prohibition of class or representative claims are not substantively unconscionable.

First, with regard to the punitive damages limitation, the Plaintiff cannot find support for the proposition that a damage limitation, in and of itself, is substantively unconscionable. *See e.g. Powertel v. Bexley*, 743 So.2d 570, 575 (Fla.Dist.Ct.App. 1999) (holding limitation on damages among the factors that contribute to a finding of substantive unconscionability).

The Court agrees with Defendant's argument that the limitation on punitive damages applies "to the fullest extent allowed by law." (Haight Decl.Ex. A at 25, § 5.d). If the arbitrator appointed by the American Arbitration Association finds that the limit on punitive damages goes beyond the law, such a limitation will not take effect. Furthermore, the limitation on punitive damages in this case is not by itself sufficient to make the arbitration clause so one-sided as to shock the conscience. *24 Hour Fitness, Inc.*, 66 Cal.App.4th at 1212–1213, 78 Cal.Rptr.2d 533.

■ Next, with regard to the prohibition on class wide arbitration, the Court is inclined to find that such a prohibition does not constitute substantive unconscionability. Certain "procedural niceties" normally associated with a formal trial are relinquished when parties contract to arbitrate disputes, and one among those "procedural niceties" is the right to pursue class actions. *Bischoff*, 180 F.Supp.2d at 1108 (citation and quotation omitted). Although a prohibition on class-wide claims was recently found to be unconscionable by the California Court of Appeals in *Szetela v. Discover Bank*, 97 Cal. App.4th 1094, 118 Cal.Rptr.2d 862, the arbitration agreement in that case is distinguishable in one important respect from the arbitration clause at issue here: the *Szetela* arbitration agreement not only precluded arbitration on a class basis, but also specifically precluded pursuit of claims in a private attorney general capacity. *Szetela*, 118. Cal.Rptr.2d at 864. Here, there is no specific preclusion of private attorney general claims. The *Szetela* Court reasoned that the preclusion of class claims was unconscionable in part, because the arbitration clause prevented customers from pursuing claims under California Business and Professions Code § 17200. *Id.* at 868.

Plaintiff makes a similar argument in opposition to the Motion to Compel, relying on *Broughton v. Cigna Healthplans*, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 67 (1999). Plaintiff argues that his claims under Section 17200 and the CLRA are not subject to arbitration. Although *Broughton* held that a claim under the CLRA was not subject to arbitration, *Broughton* is not controlling. First, as noted above, the arbitration clause in this case specifically allows for the arbitrator to provide injunctive and declaratory relief under California consumer statutes, and allows for statutory damages on an individual basis. (Haight Decl.Ex. A at 25, § 5.b.) As noted above, the *Szetela* arbitration clause does not mention the statutory relief provided for in the AT & T arbitration clause, and specifically prohibits private attorney general actions. Second, as was recently decided in *Arriaga*, claims under both CLRA and § 17200 are indeed subject to arbitration. *Arriaga*, 163 F.Supp.2d at 1196. The Court clearly applied its holding to both the CLRA and § 17200, although the Plaintiff in *Arriaga* brought a claim under § 17200 only. *Id.* at 1196 n. 9. The *Arriaga* Court reasoned:

"[I]f it were enough for a state legislature to declare, through the nature of the remedies it offers in a statute, that it did not wish to have certain claims subjected to arbitration, states would essentially be allowed to undercut the FAA in an area where Congress is supreme."

*Id.* at 1199. Further, "[a]lthough the public injunctive relief available under § 17200 might be evidence that the state legislature did not want this type of claim to go to arbitration, unless Congress declares otherwise, the determination will not be enough to make the arbitration clause unenforceable." *Id.* at 1199–1200.

Additionally, in the recently decided *Bischoff*, the Central District decided that the

prohibition of class actions does not render an arbitration clause unenforceable. *Bischoff*, 180 F.Supp.2d at 1108; *see also Arriaga*, 163 F.Supp.2d at 1197–1200 (S.D.Cal.2001) (finding prohibition of class action in arbitration clause is not substantively unconscionable). In *Bischoff*, the plaintiff relied on *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla.Dist.Ct.App.1999) to argue that under California law, an arbitration clause is unconscionable if it prohibits class actions. *Id.* at 1107–08. The *Bischoff* Court was not convinced, and opined that the Florida trial court found that the arbitration clause was unconscionable for a number of reasons, and not solely because class actions were precluded. *Id.* Similarly, in this case the class action prohibition does not make the arbitration clause unconscionable.

Although the arbitration clause at issue here precludes punitive damages and class action claims, it is not substantively unconscionable. Neither of these limitations alone would amount to substantive unconscionability, and in light of the mutuality of the arbitration obligation and the possibility of declaratory and injunctive relief for statutory claims, the limitations taken together are not enough to make the arbitration clause unconscionable. (Haight Decl. Ex. A at 25, § 5.b.) If the arbitration clause in the Welcome Guide precluded claims under the California consumer statutes, this Court would be remiss not to declare such one-sidedness unconscionable. However, the arbitration clause at issue here specifically allows for the statutory relief Plaintiff seeks, and thus the arbitration clause is not so overly harsh as to be unconscionable. Therefore, this Court is inclined to find that the arbitration clause is not so one-sided as to "shock the conscience." As noted by the court in *Arriaga*, numerous courts have upheld even non-mutual arbitration clauses against unconscionability defenses. *Arriaga* 163 F.Supp.2d at 1195 (citing *Gray v. Conseco,*

*Inc.* No. 00–322, 2000 WL 1480273 at *4–5 (C.D.Cal. Sept. 29, 2000); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir.1999)) (citations omitted). Finally, the Court notes the strong federal policy favoring arbitration.

Thus, even though the Court finds that the arbitration clause appears to be procedurally unconscionable, the Court does not find that the clause is substantively unconscionable. Unconscionability requires both a finding of substantive and procedural unconscionability. Here, only procedural unconscionability is present. Therefore, the Court finds that the arbitration clause is enforceable.

 Furthermore, the Court will not sever the class action prohibition from the arbitration clause and compel class-wide arbitration. The Seventh Circuit has held that section 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter. *Bischoff*, 180 F.Supp.2d at 1108 (citing *Champ v. Siegel Trading Co., Inc.*, 55 F.3d 269, 275 (7th Cir.1995)). Furthermore, the Central District of California has held that unless an arbitration clause has a provision for class-wide arbitration, a district court cannot order arbitration on a class wide basis. *Bischoff*, 180 F.Supp.2d at 1108–9 (citing *Gray v. Conseco, Inc.*, No. SACV000322, 2001 WL 1081347 *3 (C.D.Cal. Sept.6, 2001) (*Gray I*)). Despite the holding in *Szetela*, this Court should follow the reasoning in *Bischoff* and *Gray I* and decline the opportunity to compel class-wide arbitration. Although the arbitration clause here is not silent on the issue of class-wide arbitration, it certainly does not *provide* for class wide arbitration, and thus the Court should not compel such a result.

## C. Scope of the Agreement

The Second determination the Court must make is whether Plaintiff's claims fall

within the scope of the arbitration clause. Here, because the arbitration clause covers "[a]ny dispute or claim arising out of or relating to this Agreement or to any product or service provided in connection with this Agreement (whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory) will be resolved by binding arbitration," it is sufficiently broad to cover Plaintiff's claims. (Haight Decl.Ex. A at 24, § 5.a.) This is particularly true in light of the holding in *Arriaga*, wherein the court held that claims under the CLRA and § 17200 are subject to arbitration. *Arriaga*, 163 F.Supp.2d at 1192. Thus the Court finds that Plaintiff's claims fall within the scope of the arbitration clause.

\* \* \* \* \* \*

For the foregoing reasons, the Court GRANTS Defendant's Motion to Compel Arbitration and To Stay Proceedings.

IT IS SO ORDERED.